IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

Tammy Lynn Edmond,                          )      Civil Action No. 8:12-cv-1081-RMG-JDA
                                            )
                    Plaintiff,              )
                                            )
          vs.                               )      **REPORT AND RECOMMENDATION**
                                            )      **OF MAGISTRATE JUDGE**
Carolyn W. Colvin,[1]                       )
Commissioner of Social Security,            )
                                            )
                    Defendant.              )

      This matter is before the Court for a Report and Recommendation pursuant to 28

U.S.C. § 636(b)(1)(B) and Local Civil Rule 73.02(B)(2)(a), D.S.C.  Plaintiff brought this

action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) to obtain judicial review of a final

decision of Defendant Commissioner of Social Security ("the Commissioner"), denying

Plaintiff's claims for disability insurance benefits ("DIB") and supplemental security income

("SSI").[2]  For the reasons set forth below, it is recommended that the decision of the

Commissioner be reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g).

**PROCEDURAL HISTORY**

      In February 2007, Plaintiff filed applications for DIB and SSI, alleging an onset of

disability date of September 18, 2006.  [R.152–60.]  The claims were denied initially and

---

[1]Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013.  Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Carolyn W. Colvin should be substituted for Michael J. Astrue as Defendant in this suit.  No further action need be taken to continue this suit by reason of the last sentence of § 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

[2]Section 1383(c)(3) provides, "The final determination of the Commissioner of Social Security after a hearing under paragraph (1) shall be subject to judicial review as provided in section 405(g) of this title to the same extent as the Commissioner's final determinations under section 405 of this title."  42 U.S.C. § 1383(c)(3).

on reconsideration by the Social Security Administration ("the Administration"). [R. 88–107.]  On January 2, 2008, Plaintiff requested a hearing before an administrative law judge ("ALJ") [R. 108–09], and on September 2, 2009, ALJ Walter C. Herin, Jr., conducted a de novo hearing on Plaintiff's claims [R. 34–79].

The ALJ issued a decision on December 4, 2009, finding Plaintiff not disabled under the Social Security Act ("the Act").  [R. 23–33.]  At Step 1,[3] the ALJ found Plaintiff last met the insured status requirements of the Act on December 31, 2011 and that she had not engaged in substantial gainful activity since her alleged onset date of September 18, 2006. [R. 25, Findings 1 & 2.]  At Step 2, the ALJ found Plaintiff had the following severe impairments: congenital hip dysplasia; degenerative joint disease; status-post left total hip arthroplasty with leg extension; traumatic injury to the sciatic nerve producing left foot drop; right shoulder impingement syndrome; obesity; and adjustment disorder with depressed mood.  [R. 25, Finding 3.]  At Step 3, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the impairments listed in 20 C.F.R. Part 404, Subpart A, Appendix 1.  [R. 25, Finding 4.]  The ALJ specifically considered Listings 1.02 and 1.03 with respect to Plaintiff's physical impairments and Listing 12.04 with respect to Plaintiff's mental impairments.  [R. 25–26.]

Before addressing Step 4, Plaintiff's ability to perform her past relevant work, the ALJ found Plaintiff retained the following residual functional capacity ("RFC"):

> I find that the claimant has the residual functional capacity to lift and carry up to 10 pounds occasionally and less than 10 pounds frequently; to stand and/or walk up to two hours in an

---

[3]The five-step sequential analysis used to evaluate disability claims is discussed in the Applicable Law section, *infra*.

2

> eight-hour workday; with occasional stooping and balancing; with no crouching, kneeling or crawling; with no climbing of stairs, ramps, ladders, ropes, or scaffolds; with no foot pedals or other controls with the left lower extremity; limited to simple, routine, repetitive tasks; in a lower stress environment; and with no required ongoing interaction with the public.

[R. 26, Finding 5.] Based on this RFC, the ALJ determined at Step 4 that Plaintiff could not perform her past relevant work. [R. 31, Finding 6.] At Step 5, the ALJ determined there were jobs that existed in significant numbers in the national economy that Plaintiff could perform. [R. 32, Finding 10.] Thus, the ALJ concluded Plaintiff was not under a disability as defined by the Act from the alleged onset date of September 18, 2006 through the date of the ALJ's decision. [R. 33, Finding 11.]

Plaintiff requested Appeals Council review of the ALJ's decision, but the Appeals Council declined. [R. 7–10.] Plaintiff filed this action for judicial review on April 23, 2012. [Doc. 1.]

## THE PARTIES' POSITIONS

Plaintiff contends the ALJ erred by (1) disregarding the opinion of Plaintiff's treating orthopedic surgeon; (2) finding Plaintiff's testimony regarding her limitations and the disabling effects of her pain was not fully credible; (3) misstating what transpired at the hearing when he stated that Plaintiff did not demonstrate evidence of pain or discomfort while testifying at the hearing; (4) failing to address Plaintiff's need for an assistive device in his RFC finding and his hypothetical to the vocational expert ("VE"); and (5) relying on VE testimony that was not consistent with the *Dictionary of Occupational Titles* ("DOT"). [Doc. 9; *see also* Doc. 11 (responding to arguments raised by the Commissioner).] Plaintiff contends that, as a result of these errors, the ALJ's decision must be reversed for an

award of benefits or remanded for further administrative action. [Doc. 9 at 14; Doc. 11 at 3.]

The Commissioner, on the other hand, contends the ALJ's decision is supported by substantial evidence. [Doc. 10 at 9–23.] Specifically, the Commissioner argues the ALJ properly weighed Dr. Suarez's opinion and properly found his various restrictive opinions were not supported by his own treatment notes. [*Id.* at 10–15.] Additionally, the Commissioner argues the ALJ properly evaluated Plaintiff's subjective complaints of pain in accordance with the Fourth Circuit's established two-step analysis for evaluating subjective complaints. [*Id.* at 16–19.] The Commissioner also contends the ALJ's hypothetical question to the VE captured the essentials of the ALJ's assessment of Plaintiff's RFC, and therefore, the VE's response to the question constituted substantial evidence in support of the ALJ's finding that Plaintiff could perform other work existing in the national economy.[4] [*Id.* at 19–22.] Lastly, the Commissioner submits that, if remand is necessary, the case should be remanded for further administrative proceedings rather than for an award of benefits. [*Id.* at 22–23.]

## STANDARD OF REVIEW

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla—i.e., the evidence must do more than merely create a suspicion of the existence of a fact and must include such relevant evidence as a reasonable person would accept as adequate to

---

[4]The Court notes that the Commissioner has failed to directly address whether there was a conflict between the VE's testimony and the DOT; rather, the Commissioner contends that information such as job stress level is provided by vocational experts, and in this case, the VE found, based on his training and expertise, that an individual with Plaintiff's limitations could perform the quality control job identified by the VE. [Doc. 10 at 20–21.]

4

support the conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966) (citing *Woolridge v. Celebrezze*, 214 F. Supp. 686, 687 (S.D.W. Va. 1963)) ("Substantial evidence, it has been held, is evidence which a reasoning mind would accept as sufficient to support a particular conclusion.  It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance.  If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'").

Where conflicting evidence "allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Commissioner] (or the [Commissioner's] designate, the ALJ)," not on the reviewing court.  *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996); *see also  Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991) (stating that where the Commissioner's decision is supported by substantial evidence, the court will affirm, even if the reviewer would have reached a contrary result as finder of fact and even if the reviewer finds that the evidence preponderates against the Commissioner's decision).  Thus, it is not within the province of a reviewing court to determine the weight of the evidence, nor is it the court's function to substitute its judgment for that of the Commissioner so long as the decision is supported by substantial evidence.  *Laws*, 368 F.2d at 642; *Snyder v. Ribicoff*, 307 F.2d 518, 520 (4th Cir. 1962).

The reviewing court will reverse the Commissioner's decision on plenary review, however, if the decision applies incorrect law or fails to provide the court with sufficient reasoning to determine that the Commissioner properly applied the law. *Myers v. Califano,*

611 F.2d 980, 982 (4th Cir. 1980); *see also Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994).   Where the Commissioner's decision "is in clear disregard of the overwhelming weight of the evidence, Congress has empowered the courts to modify or reverse the [Commissioner's] decision 'with or without remanding the cause for a rehearing.'"   *Vitek v. Finch*, 438 F.2d 1157, 1158 (4th Cir. 1971) (quoting 42 U.S.C. § 405(g)).   Remand is unnecessary where "the record does not contain substantial evidence to support a decision denying coverage under the correct legal standard and when reopening the record for more evidence would serve no purpose."   *Breeden v. Weinberger*, 493 F.2d 1002, 1012 (4th Cir. 1974).

The court may remand a case to the Commissioner for a rehearing under sentence four or sentence six of 42 U.S.C. § 405(g).   *Sargent v. Sullivan*, 941 F.2d 1207 (4th Cir. 1991) (unpublished table decision).   To remand under sentence four, the reviewing court must find either that the Commissioner's decision is not supported by substantial evidence or that the Commissioner incorrectly applied the law relevant to the disability claim.   *See, e.g.*, *Jackson v. Chater*, 99 F.3d 1086, 1090–91 (11th Cir. 1996) (holding remand was appropriate where the ALJ failed to develop a full and fair record of the claimant's residual functional capacity); *Brehem v. Harris*, 621 F.2d 688, 690 (5th Cir. 1980) (holding remand was appropriate where record was insufficient to affirm but was also insufficient for court to find the claimant disabled).   Where the court cannot discern the basis for the Commissioner's decision, a remand under sentence four may be appropriate to allow the Commissioner to explain the basis for the decision.   *See Smith v. Heckler*, 782 F.2d 1176, 1181–82 (4th Cir. 1986) (remanding case where decision of ALJ contained "a gap in its

reasoning" because ALJ did not say he was discounting testimony or why); *Gordon v. Schweiker*, 725 F.2d 231, 235 (4th Cir. 1984) (remanding case where neither the ALJ nor the Appeals Council indicated the weight given to relevant evidence). On remand under sentence four, the ALJ should review the case on a complete record, including any new material evidence. *See Smith*, 782 F.2d at 1182 ("The [Commissioner] and the claimant may produce further evidence on remand."). After a remand under sentence four, the court enters a final and immediately appealable judgment and then loses jurisdiction. *Sargent*, 941 F.2d 1207 (citing *Melkonyan v. Sullivan*, 501 U.S. 89, 102 (1991)).

In contrast, sentence six provides:

> The court may . . . at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding . . . .

42 U.S.C. § 405(g). A reviewing court may remand a case to the Commissioner on the basis of new evidence only if four prerequisites are met: (1) the evidence is relevant to the determination of disability at the time the application was first filed; (2) the evidence is material to the extent that the Commissioner's decision might reasonably have been different had the new evidence been before him; (3) there is good cause for the claimant's failure to submit the evidence when the claim was before the Commissioner; and (4) the claimant made at least a general showing of the nature of the new evidence to the reviewing court. *Borders v. Heckler*, 777 F.2d 954, 955 (4th Cir. 1985) (citing 42 U.S.C. § 405(g); *Mitchell v. Schweiker*, 699 F.2d 185, 188 (4th Cir. 1983); *Sims v. Harris*, 631 F.2d 26, 28 (4th Cir. 1980); *King v. Califano*, 599 F.2d 597, 599 (4th Cir. 1979)), *superseded by*

*amendment to statute*, 42 U.S.C. § 405(g), *as recognized in Wilkins v. Sec'y, Dep't of Health & Human Servs.*, 925 F.2d 769, 774 (4th Cir. 1991).[5]  With remand under sentence six, the parties must return to the court after remand to file modified findings of fact. *Melkonyan*, 501 U.S. at 98.  The reviewing court retains jurisdiction pending remand and does not enter a final judgment until after the completion of remand proceedings.  *See Allen v. Chater*, 67 F.3d 293 (4th Cir. 1995) (unpublished table decision) (holding that an order remanding a claim for Social Security benefits pursuant to sentence six of 42 U.S.C. § 405(g) is not a final order).

## APPLICABLE LAW

The Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are under a disability.  42 U.S.C. § 423(a).  "Disability" is defined as:

> the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 consecutive months.

*Id.* § 423(d)(1)(A).

---

[5]Though the court in *Wilkins* indicated in a parenthetical that the four-part test set forth in *Borders* had been superseded by an amendment to 42 U.S.C. § 405(g), courts in the Fourth Circuit have continued to cite the requirements outlined in *Borders* when evaluating a claim for remand based on new evidence.  *See, e.g.*, *Brooks v. Astrue*, No. 6:10-cv-152, 2010 WL 5478648, at *8 (D.S.C. Nov. 23, 2010); *Ashton v. Astrue*, No. TMD 09-1107, 2010 WL 3199345, at *3 (D. Md. Aug. 12, 2010); *Washington v. Comm'r of Soc. Sec.*, No. 2:08-cv-93, 2009 WL 86737, at *5 (E.D. Va. Jan. 13, 2009); *Brock v. Sec'y of Health & Human Servs.*, 807 F. Supp. 1248, 1250 n.3 (S.D.W. Va. 1992).  Further, the Supreme Court of the United States has not suggested *Borders*' construction of § 405(g) is incorrect.  *See Sullivan v. Finkelstein*, 496 U.S. 617, 626 n.6 (1990).  Accordingly, the Court will apply the more stringent *Borders* inquiry.

I.     **The Five Step Evaluation**

To facilitate uniform and efficient processing of disability claims, federal regulations have reduced the statutory definition of disability to a series of five sequential questions. *See, e.g.*, *Heckler v. Campbell*, 461 U.S. 458, 461 n.2 (1983) (noting a "need for efficiency" in considering disability claims).  The ALJ must consider whether (1) the claimant is engaged in substantial gainful activity; (2) the claimant has a severe impairment; (3) the impairment meets or equals an impairment included in the Administration's Official Listings of Impairments found at 20 C.F.R. Pt. 404, Subpt. P, App. 1; (4) the impairment prevents the claimant from performing past relevant work; and (5) the impairment prevents the claimant from having substantial gainful employment.  20 C.F.R. §§ 404.1520, 416.920. Through the fourth step, the burden of production and proof is on the claimant.  *Grant v. Schweiker*, 699 F.2d 189, 191 (4th Cir. 1983).  The claimant must prove disability on or before the last day of her insured status to receive disability benefits.  *Everett v. Sec'y of Health, Educ. & Welfare*, 412 F.2d 842, 843 (4th Cir. 1969).  If the inquiry reaches step five, the burden shifts to the Commissioner to produce evidence that other jobs exist in the national economy that the claimant can perform, considering the claimant's age, education, and work experience.  *Grant*, 699 F.2d at 191.  If at any step of the evaluation the ALJ can find an individual is disabled or not disabled, further inquiry is unnecessary.  20 C.F.R. §§ 404.1520(a), 416.920(a)(4); *Hall v. Harris*, 658 F.2d 260, 264 (4th Cir. 1981).

9

## A.     *Substantial Gainful Activity*

"Substantial gainful activity" must be both substantial—involves doing significant physical or mental activities, 20 C.F.R. §§ 404.1572(a), 416.972(a)—and gainful—done for pay or profit, whether or not a profit is realized, *id.* §§ 404.1572(b), 416.972(b).   If an individual has earnings from employment or self-employment above a specific level set out in the regulations, he is generally presumed to be able to engage in substantial gainful activity.  *Id.* §§ 404.1574–.1575, 416.974–.975.

## B.     *Severe Impairment*

An impairment is "severe" if it significantly limits an individual's ability to perform basic work activities.   *See id.* §§ 404.1521, 416.921.   When determining whether a claimant's physical and mental impairments are sufficiently severe, the ALJ must consider the combined effect of all of the claimant's impairments.   42 U.S.C. §§ 423(d)(2)(B), 1382c(a)(3)(G).  The ALJ must evaluate a disability claimant as a whole person and not in the abstract, having several hypothetical and isolated illnesses. *Walker v. Bowen*, 889 F.2d 47, 49–50 (4th Cir. 1989) (stating that, when evaluating the effect of a number of impairments on a disability claimant, "the [Commissioner] must consider the combined effect of a claimant's impairments and not fragmentize them").   Accordingly, the ALJ must make specific and well-articulated findings as to the effect of a combination of impairments when determining whether an individual is disabled.   *Id.* at 50 ("As a corollary to this rule, the ALJ must adequately explain his or her evaluation of the combined effects of the impairments.").   If the ALJ finds a combination of impairments to be severe, "the combined

10

impact of the impairments shall be considered throughout the disability determination process."  42 U.S.C. §§ 423(d)(2)(B), 1382c(a)(3)(G).

**C.    *Meets or Equals an Impairment Listed in the Listings of Impairments***

If a claimant's impairment or combination of impairments meets or medically equals the criteria of a listing found at 20 C.F.R. Pt. 404, Subpt. P, App.1 and meets the duration requirement found at 20 C.F.R. §§ 404.1509 or 416.909, the ALJ will find the claimant disabled without considering the claimant's age, education, and work experience.[6]  20 C.F.R. §§ 404.1520(d), 416.920(a)(4)(iii), (d).

**D.    *Past Relevant Work***

The assessment of a claimant's ability to perform past relevant work "reflect[s] the statute's focus on the functional capacity retained by the claimant."  *Pass v. Chater*, 65 F.3d 1200, 1204 (4th Cir. 1995).  At this step of the evaluation, the ALJ compares the claimant's residual functional capacity[7] with the physical and mental demands of the kind of work he has done in the past to determine whether the claimant has the residual functional capacity to do his past work.  20 C.F.R. §§ 404.1560(b), 416.960(b).

**E.    *Other Work***

As previously stated, once the ALJ finds that a claimant cannot return to her prior work, the burden of proof shifts to the Commissioner to establish that the claimant could perform other work that exists in the national economy.  *See* 20 C.F.R. §§ 404.1520(f)–(g),

---

[6]The Listing of Impairments is applicable to SSI claims pursuant to 20 C.F.R. §§ 416.911, 416.925.

[7]Residual functional capacity is "the most [a claimant] can still do despite [his] limitations."  20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).

11

416.920(f)–(g); *Hunter v. Sullivan*, 993 F.2d 31, 35 (4th Cir. 1992).  To meet this burden,

the Commissioner may sometimes rely exclusively on the Medical-Vocational Guidelines

(the "grids").  Exclusive reliance on the "grids" is appropriate where the claimant suffers

primarily from an exertional impairment, without significant nonexertional factors.[8]  20

C.F.R. Pt. 404, Subpt. P, App. 2, § 200.00(e); *Gory v. Schweiker*, 712 F.2d 929, 930–31

(4th Cir. 1983) (stating that exclusive reliance on the grids is appropriate in cases involving

exertional limitations).  When a claimant suffers from both exertional and nonexertional

limitations, the grids may serve only as guidelines.  *Gory*, 712 F.2d at 931.  In such a case,

the Commissioner must use a vocational expert to establish the claimant's ability to

perform other work.  20 C.F.R. §§ 404.1569a, 416.969a; *see Walker*, 889 F.2d at 49–50

("Because we have found that the grids cannot be relied upon to show conclusively that

claimant is not disabled, when the case is remanded it will be incumbent upon the

[Commissioner] to prove by expert vocational testimony that despite the combination of

exertional and nonexertional impairments, the claimant retains the ability to perform

specific jobs which exist in the national economy.").  The purpose of using a vocational

expert is "to assist the ALJ in determining whether there is work available in the national

economy which this particular claimant can perform."  *Walker*, 889 F.2d at 50.  For the

vocational expert's testimony to be relevant, "it must be based upon a consideration of all

---

[8] An exertional limitation is one that affects the claimant's ability to meet the strength requirements of jobs. 20 C.F.R. §§ 404.1569a(a), 416.969a(a).  A nonexertional limitation is one that affects the ability to meet the demands of the job other than the strength demands.  *Id.*  Examples of nonexertional limitations include but are not limited to difficulty functioning because of being nervous, anxious, or depressed; difficulty maintaining attention or concentrating; difficulty understanding or remembering detailed instructions; difficulty seeing or hearing.  20 C.F.R. §§ 404.1569a(c)(1), 416.969a(c)(1).

other evidence in the record, . . . and it must be in response to proper hypothetical questions which fairly set out all of claimant's impairments." *Id.* (citations omitted).

## II.    Developing the Record

The ALJ has a duty to fully and fairly develop the record. *See Cook v. Heckler*, 783 F.2d 1168, 1173 (4th Cir. 1986). The ALJ is required to inquire fully into each relevant issue. *Snyder*, 307 F.2d at 520. The performance of this duty is particularly important when a claimant appears without counsel. *Marsh v. Harris*, 632 F.2d 296, 299 (4th Cir. 1980). In such circumstances, "the ALJ should scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts, . . . being especially diligent in ensuring that favorable as well as unfavorable facts and circumstances are elicited." *Id.* (internal quotations and citations omitted).

## III.    Treating Physicians

If a treating physician's opinion on the nature and severity of a claimant's impairments is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the record, the ALJ must give it controlling weight. 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); *see Mastro v. Apfel*, 270 F.3d 171, 178 (4th Cir. 2001). The ALJ may discount a treating physician's opinion if it is unsupported or inconsistent with other evidence, i.e., when the treating physician's opinion does not warrant controlling weight, *Craig*, 76 F.3d at 590, but the ALJ must nevertheless assign a weight to the medical opinion based on the 1) length of the treatment relationship and the frequency of examination; 2) nature and extent of the

13

treatment relationship; 3) supportability of the opinion; 4) consistency of the opinion with the record a whole; 5) specialization of the physician; and 6) other factors which tend to support or contradict the opinion, 20 C.F.R. §§ 404.1527(c), 416.927(c). Similarly, where a treating physician has merely made conclusory statements, the ALJ may afford the opinion such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments. *See Craig*, 76 F.3d at 590 (holding there was sufficient evidence for the ALJ to reject the treating physician's conclusory opinion where the record contained contradictory evidence).

In any instance, a treating physician's opinion is generally entitled to more weight than a consulting physician's opinion. *See Mitchell v. Schweiker*, 699 F.2d 185, 187 (4th Cir. 1983) (stating that treating physician's opinion must be accorded great weight because "it reflects an expert judgment based on a continuing observation of the patient's condition for a prolonged period of time"); 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). An ALJ determination coming down on the side of a non-examining, non-treating physician's opinion can stand only if the medical testimony of examining and treating physicians goes both ways. *Smith v. Schweiker*, 795 F.2d 343, 346 (4th Cir. 1986). Further, the ALJ is required to review all of the medical findings and other evidence that support a medical source's statement that a claimant is disabled. 20 C.F.R. §§ 404.1527(d), 416.927(d). However, the ALJ is responsible for making the ultimate determination about whether a claimant meets the statutory definition of disability. *Id.*

IV.    **Medical Tests and Examinations**

The ALJ is required to order additional medical tests and exams only when a claimant's medical sources do not give sufficient medical evidence about an impairment to determine whether the claimant is disabled. 20 C.F.R. §§ 404.1517, 416.917; *see also Conley v. Bowen*, 781 F.2d 143, 146 (8th Cir. 1986). The regulations are clear: a consultative examination is not required when there is sufficient medical evidence to make a determination on a claimant's disability. 20 C.F.R. §§ 404.1517, 416.917. Under the regulations, however, the ALJ may determine that a consultative examination or other medical tests are necessary. *Id.*

V.    **Pain**

Congress has determined that a claimant will not be considered disabled unless he furnishes medical and other evidence (e.g., medical signs and laboratory findings) showing the existence of a medical impairment that could reasonably be expected to produce the pain or symptoms alleged. 42 U.S.C. § 423(d)(5)(A). In evaluating claims of disabling pain, the ALJ must proceed in a two-part analysis. *Morgan v. Barnhart,* 142 F. App'x 716, 723 (4th Cir. 2005) (unpublished opinion). First, "the ALJ must determine whether the claimant has produced medical evidence of a 'medically determinable impairment which could reasonably be expected to produce . . . the actual pain, in the amount and degree, alleged by the claimant.'" *Id.* (quoting *Craig*, 76 F.3d at 594). Second, "if, and only if, the ALJ finds that the claimant has produced such evidence, the ALJ must then determine, as

a matter of fact, whether the claimant's underlying impairment *actually* causes her alleged pain." *Id.* (emphasis in original) (citing *Craig*, 76 F.3d at 595).

Under the "pain rule" applicable within the United States Court of Appeals for the Fourth Circuit, it is well established that "subjective complaints of pain and physical discomfort could give rise to a finding of total disability, even when those complaints [a]re not supported fully by objective observable signs." *Coffman v. Bowen*, 829 F.2d 514, 518 (4th Cir. 1987) (citing *Hicks v. Heckler*, 756 F.2d 1022, 1023 (4th Cir. 1985)). The ALJ must consider all of a claimant's statements about his symptoms, including pain, and determine the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence. 20 C.F.R. §§ 404.1528, 416.928. Indeed, the Fourth Circuit has rejected a rule which would require the claimant to demonstrate objective evidence of the pain itself, *Jenkins v. Sullivan*, 906 F.2d 107, 108 (4th Cir. 1990), and ordered the Commissioner to promulgate and distribute to all administrative law judges within the circuit a policy stating Fourth Circuit law on the subject of pain as a disabling condition, *Hyatt v. Sullivan*, 899 F.2d 329, 336–37 (4th Cir. 1990). The Commissioner thereafter issued the following "Policy Interpretation Ruling":

> This Ruling supersedes, only in states within the Fourth Circuit (North Carolina, South Carolina, Maryland, Virginia and West Virginia), Social Security Ruling (SSR) 88-13, Titles II and XVI: Evaluation of Pain and Other Symptoms:
>
> ...
>
> **FOURTH CIRCUIT STANDARD:** Once an underlying physical or [m]ental impairment that could reasonably be expected to cause pain is shown by medically acceptable objective evidence, such as clinical or laboratory diagnostic techniques, the adjudicator must evaluate the disabling effects

16

of a disability claimant's pain, even though its intensity or severity is shown only by subjective evidence. If an underlying impairment capable of causing pain is shown, subjective evidence of the pain, its intensity or degree can, by itself, support a finding of disability. Objective medical evidence of pain, its intensity or degree (i.e., manifestations of the functional effects of pain such as deteriorating nerve or muscle tissue, muscle spasm, or sensory or motor disruption), if available, should be obtained and considered. Because pain is not readily susceptible of objective proof, however, the absence of objective medical evidence of the intensity, severity, degree or functional effect of pain is not determinative.

SSR 90-1p, 55 Fed. Reg. 31,898-02, at 31,899 (Aug. 6, 1990). SSR 90-1p has since been superseded by SSR 96-7p, which is consistent with SSR 90-1p. *See* SSR 96-7p, 61 Fed. Reg. 34,483-01 (July 2, 1996). SSR 96-7p provides, "If an individual's statements about pain or other symptoms are not substantiated by the objective medical evidence, the adjudicator must consider all of the evidence in the case record, including any statements by the individual and other persons concerning the individual's symptoms." *Id.* at 34,485; *see also* 20 C.F.R. §§ 404.1529(c)(1)–(c)(2), 416.929(c)(1)–(c)(2) (outlining evaluation of pain).

## VI.    Credibility

The ALJ must make a credibility determination based upon all the evidence in the record. Where an ALJ decides not to credit a claimant's testimony about pain, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding. *Hammond v. Heckler*, 765 F.2d 424, 426 (4th Cir. 1985). Although credibility determinations are generally left to the ALJ's discretion, such determinations should not be sustained if they are based on improper criteria. *Breeden*,

17

493 F.2d at 1010 ("We recognize that the administrative law judge has the unique advantage of having heard the testimony firsthand, and ordinarily we may not disturb credibility findings that are based on a witness's demeanor. But administrative findings based on oral testimony are not sacrosanct, and if it appears that credibility determinations are based on improper or irrational criteria they cannot be sustained.").

## APPLICATION AND ANALYSIS

**Vocational Expert Testimony**

The ALJ has an affirmative duty to inquire into conflicts between the VE's testimony and the DOT:

> Occupational evidence provided by a VE or [vocational specialist ("VS")] generally should be consistent with the occupational information supplied by the DOT. When there is an apparent unresolved conflict between VE or VS evidence and the DOT, the adjudicator must elicit a reasonable explanation for the conflict before relying on the VE or VS evidence to support a determination or decision about whether the claimant is disabled. At the hearings level, as part of the adjudicator's duty to fully develop the record, the adjudicator will inquire, on the record, as to whether or not there is such consistency.
>
> Neither the DOT nor the VE or VS evidence automatically "trumps" when there is a conflict. The adjudicator must resolve the conflict by determining if the explanation given by the VE or VS is reasonable and provides a basis for relying on the VE or VS testimony rather than on the DOT information.
>
> . . . .
>
> When a VE or VS provides evidence about the requirements of a job or occupation, *the adjudicator has an affirmative responsibility to ask about any possible conflict between that VE or VS evidence and information provided in the DOT*. In these situations, the adjudicator will:

> - Ask the VE or VS if the evidence he or she has provided conflicts with information provided in the DOT; and
>
> - If the VE's or VS's evidence appears to conflict with the DOT, the adjudicator will obtain a reasonable explanation for the apparent conflict.

SSR 00-4p, 65 Fed. Reg. 75,759-01, at 75,760 (Dec. 4, 2000) (emphasis added); *see Novak v. Comm'r of Soc. Sec. Admin.*, No. 9:08-2687-HFF-BM, 2009 WL 1922297, at *3 (D.S.C. June 30, 2009) (rejecting the Commissioner's argument that SSR 00-4p "places no affirmative obligation on the ALJ to inquire into whether there are conflicts until a conflict becomes evident" and noting that the Commissioner's "interpretation is inconsistent with the language of the ruling"); *Oxendine v. Massanari*, 181 F. Supp. 2d 570, 573–74 (E.D.N.C. 2001) (concluding the Fourth Circuit had adopted an analogous principle that was confirmed as correct by SSR 00-4p).  Reasonable explanations for a conflict between the VE's testimony and the DOT include that the VE's testimony provides information not listed in the DOT or more specific information about a job or occupation than the DOT, which lists only the maximum requirements of occupations as generally performed.  SSR 00-4p, 65 Fed. Reg. at 75,760.  Importantly,

> When vocational evidence provided by a VE or VS is not consistent with information in the DOT, the adjudicator must resolve this conflict before relying on the VE or VS evidence to support a determination or decision that the individual is or is not disabled.  The adjudicator will explain in the determination or decision how he or she resolved the conflict.  The adjudicator must explain the resolution of the conflict irrespective of how the conflict was identified.

*Id.* at 75,760–61.

Here, at the hearing, the ALJ posed two hypotheticals to the VE; the second hypothetical incorporated the ALJ's ultimate RFC assessment, and the VE responded that,

as to the second hypothetical, there would be three jobs available to a person with those

limitations:

> Q    For hypothetical number two assuming, please, the presence of an individual age 42 to 45 who is of the approximate education and experience background as the Claimant in this case who is seeking employment of the following tasks, or limitations: Performing only simple, routine, repetitive tasks that do no require, let's see, bear with me, ongoing interaction with the general public and which are lower stress in nature.  And by lower stress I would attempt to define that as not having to meet a rigid and inflexible production schedule; not being required to put up with frequent material changes within procedures and processes at the work center. Not having to make difficult decisions or complex decisions and not having to put up with really difficult people like me, if that makes sense.  I am not suggesting a position as a, what these call a red coat for Delta at the Atlanta Airport that's the troubleshooter and problem solver that catches complaints all day long.

> A    Understood, Your Honor.  And Your Honor, we're still at the sedentary level?

> Q    Oh, yeah.  I said it's identical to the other one --

> A    Okay.

> Q    -- so we are still working with no lifting and carrying over ten pounds occasionally and less than ten frequently.  No standing over two hours in an eight hour workday.  The same positional or postural restrictions of no crouching, kneeling, climbing the stairs or ramps, crawling or climbing of ladders, ropes or scaffolds.  And no more than occasional stooping or balancing and no use of the lower -- left lower extremity for foot pedals or the controls.

> A    Your Honor, under those conditions we probably have a few jobs to (inaudible) sedentary and unskilled level; quality control examiners, 450 in South Carolina, 14,000 US, DOT 739.687-182; material handlers, DOT, I'm sorry, 250 in South Carolina, 14,000 US, DOT 529.687-183.   A limited number of assemblers, about 850 in South Carolina, 65,000

20

> US, <u>DOT</u> 865.687-014 and that's getting kind of close to a comprehensive list at the sedentary and unskilled level.

[R. 74–75.] The ALJ did not ask the VE whether his testimony was consistent with the DOT. [*See* R. 70–76.] In his decision, the ALJ adopted the VE's recommendation that Plaintiff could perform the jobs of quality control examiner, DOT# 739.687-182; material handler, DOT# 529.687-183; and assembler, DOT# 865.687-014. [R. 32.] The ALJ also concluded that, "[p]ursuant to SSR 00-4p, the vocational expert's testimony [wa]s consistent with the information contained in the Dictionary of Occupational Titles." [*Id.*]

Plaintiff contends the ALJ's decision is in error because the testimony of the VE was inconsistent with the DOT, and the ALJ failed to comply with SSR 00-4p because the ALJ did not (1) ask the VE whether his testimony was consistent with the DOT or (2) elicit a reasonable explanation for the conflict before relying on the VE's testimony. [Doc. 9 at 12.] Specifically, Plaintiff contends the DOT does not include the stress level of job environments, and thus, the ALJ should have elicited testimony from the VE as to why the quality control examiner job would qualify as lower stress. [*Id.* at 13.] Plaintiff also argues the job of quality control examiner identified by the VE would not accommodate the lower stress environment limitation assessed by the ALJ. [*Id.*] Additionally, Plaintiff contends two of the three DOT codes given by the VE do not match any job listings in the DOT:

> The ALJ found, based on vocational expert testimony, that Plaintiff could perform the work of a quality control examiner (<u>DOT</u> #739.687-182). The ALJ also found that [Plaintiff] could perform the work of a material handler (<u>DOT</u> #529.687-183) and an assembler (<u>DOT</u> #865.687-014). (R. at 32.) The <u>Dictionary of Occupational Title (DOT)</u> codes given for these last two jobs however, do not match any job listings in the <u>DOT</u>. The work of a material handler, DOT #929.687-030, is heavy work and would obviously be beyond Plaintiff's found sedentary residual functional capacity. No assembler jobs with

21

>a DOT code resembl[ing] the one given by the VE was located
>in the <u>DOT</u>, making judicial review impossible.

[*Id.*]

The Commissioner, on the other hand, argues Plaintiff's contention that the quality control job the VE cited would not be low stress is simply speculative and unsupported by any authority because the DOT does not address job stress levels; information regarding specific job requirements is to be provided by vocational experts.  [Doc. 10 at 21.] Additionally, the Commissioner argues that, even assuming the other two jobs the VE identified were incorrectly cited, the VE also found, based upon his training and expertise, that an individual with Plaintiff's limitations could perform the quality control job.  [*Id.*]

The Court agrees the ALJ did not comply with the directive of SSR 00-4p to ask the VE whether his testimony conflicted with the DOT.  Further, as noted by Plaintiff and the Commissioner, a job's stress levels are not identified in the DOT, and thus, the VE's testimony regarding any job under the second hypothetical, which incorporated the stress level limitation, would be inconsistent with the DOT.  *See* SSR 00-4p, 65 Fed. Reg. at 75,760 (indicating a VE's testimony is inconsistent with the DOT when the VE provides information not available in the DOT by noting one reasonable explanation for a conflict in occupational information may be that the VE can provide information not listed in the DOT based on "other reliable publications, information obtained directly from employers, or from [the] VE's . . . experience in job placement or career counseling).  Moreover, two of the job codes identified by the VE do not match listings in the DOT, which testimony would also be inconsistent with the DOT.  Finally, the ALJ concluded the VE's testimony was consistent with the DOT without explanation even though, as discussed, the VE's

22

testimony was inconsistent with the DOT.[9]    [*See* R. 32–33.]    Accordingly, the ALJ's decision fails to comply with SSR 00-4p and, thus, is in error.  *See* SSR 00-4p; *see also Fisher v. Barnhart*, 181 F. App'x 359, 366 (4th Cir. 2006) (noting the ALJ complied with SSR 00-4p by inquiring on the record whether the VE's testimony was consistent with the DOT; eliciting a reasonable explanation for the VE's knowledge of the various jobs' sit/stand option, which was not provided in the DOT; and stating in his decision that the VE's testimony was consistent with the DOT).

In certain instances, an ALJ's failure to comply with SSR 00-4p may be harmless error.  *See, e.g.*, *Renfrow v. Astrue*, 496 F.3d 918, 921 (8th Cir. 2007) (holding the ALJ's failure to ask about conflict between the VE testimony and DOT was harmless error because no conflict existed).  However, given the number of discrepancies between the VE's testimony and the DOT in this case, as well as the VE's testimony that the three jobs he identified were "getting kind of close to a comprehensive list at the sedentary and unskilled level" under the second hypothetical[10] [R. 75], the ALJ's failure to comply with SSR 00-4p is not harmless error, *see Gull v. Barnhart*, No. 5:05CV00085, 2006 WL 1982769, at *9 (W.D. Va. July 14, 2006) (concluding remand was appropriate because the ALJ failed to inquire about inconsistencies between the VE's testimony and the DOT).

---

[9]As stated, the Commissioner has failed to directly address whether there was a conflict between the VE's testimony and the DOT; rather, the Commissioner contends that information such as job stress level is provided by vocational experts, and in this case, the VE found, based on his training and expertise, that an individual with Plaintiff's limitations could perform the quality control job.  [Doc. 10 at 20–21.]  However, the record does not indicate that the VE's testimony that Plaintiff could perform the quality control job was based on the VE's training and expertise rather than the DOT [*see* R. 37, 70–76], which, as discussed, is contrary to SSR 00-4p.

[10]That is, the VE's testimony appears to indicate that, if the two jobs with codes that do not match the listings in the DOT are excluded, it is a close question as to whether there were a significant number of available jobs Plaintiff can perform.

23

Thus, the Court concludes remand for further administrative action is necessary for the Court to determine whether the Commissioner met her burden at Step 5.

**Plaintiff's Remaining Arguments**

Because the Court finds the ALJ's failure to comply with SSR 00-4p at Step 5 is a sufficient basis to remand the case to the Commissioner, the Court declines to specifically address Plaintiff's additional allegations of error by the ALJ.  However, upon remand, the Commissioner should take into consideration Plaintiff's remaining allegations of error, including Plaintiff's allegations that the ALJ erred by (1) disregarding the opinion of Plaintiff's treating orthopedic surgeon; (2) finding Plaintiff's testimony regarding her limitations and the disabling effects of her pain was not fully credible; (3) misstating what transpired at the hearing when he stated that Plaintiff did not demonstrate evidence of pain or discomfort while testifying at the hearing; and (4) failing to address Plaintiff's need for an assistive device in his RFC finding and his hypothetical to the vocational expert.[11]

### CONCLUSION AND RECOMMENDATION

Wherefore, based on the foregoing, it is recommended that the decision of the Commissioner be REVERSED and REMANDED for further administrative action consistent with this recommendation, pursuant to sentence four of 42 U.S.C. § 405(g).

---

[11]Generally, the Court considers a claimant's alleged errors in the order in which the alleged errors appear in the ALJ's analysis—e.g., if the claimant alleges an error occurred at Step 3 in the sequential analysis, the Court would consider that allegation of error before considering an alleged error at Step 4 because correcting an error at Step 3 could determine the claimant is entitled to benefits, which would obviate the need for analysis at Step 4.  In this case, however, even assuming the ALJ's decision is otherwise supported by substantial evidence, the ALJ erred at the point where the Commissioner bears the burden of proof, and as stated, there is an indication that the Commissioner may not be able to carry her burden of proof and demonstrate there are a significant number of available jobs Plaintiff can perform.  Therefore, mindful of the standard of review, *see* 42 U.S.C. § 405(g); *Richardson*, 402 U.S. at 401; *Craig*, 76 F.3d at 589, the Court has addressed only Plaintiff's allegations of error with respect to the ALJ's analysis of Step 5, but on remand, the Commissioner should also consider the unaddressed allegations of error.

IT IS SO RECOMMENDED.

s/Jacquelyn D. Austin
United States Magistrate Judge

July 29, 2013
Greenville, South Carolina